Case number 23-3005, United States of America v. Troy Sargent Appellant. Ms. Minzer for the appellant, Mr. Hennifer for the appellate. Good morning, Your Honors, and may it please the Court, Judith Meisner representing the appellant, Troy Sargent. The issue in this case is whether the District Court erred in applying the guideline for aggravated assault to A2.2 rather than the guideline for obstructing or impeding officers to A2.4 to Mr. Sargent's conduct of swinging an open hand towards a Capitol Police officer and making contact with that officer, 30 seconds later swinging an open hand again, intending to hit that officer but hitting somebody else. There were no injuries. He was convicted of violating 18 U.S.C. Section 111, which is forcibly assaulting, resisting, imposing, impeding, intimidating, interfering with officers in performing their official duties. And where here the application of the aggravated assault guideline was based on the commentary definition of aggravated assault, which includes assault with involving the intent to commit another felony. Here that felony was civil disorder. Mr. Sargent argued below and maintains here that the aggravated assault guideline did not apply to his minimal contact. Aggravated assault is not defined in the text of the guideline. It is defined in the commentary to the guideline as meaning a felonious assault that involves a dangerous weapon with intent to cause bodily injury with that weapon, serious bodily injury, strangling, suffocating, or attempting to strangle or suffocate, and an intent to commit another felony. We submit that no deference is due to the commentary definition because it includes assault with intent to commit another felony. When the guidelines were first drafted in 1987, this aggravated assault guideline 282.2 was a part of that initial package. Yes. And that package was sent to Congress. And my understanding is that the commentary that defined 282.2 was part of the package that was sent to Congress and that that commentary at that time included the language an aggravated assault is an assault with intent to commit another crime. If all of that is true, Congress reviewed the guidelines and approved them, and it would have looked at the commentary in determining whether to approve that guideline, just like anybody else would look at the commentary to try to figure out what that guideline is supposed to mean. Doesn't that – shouldn't that impact how we – how or what type of deference we give to that commentary? Well, the statutes don't require commentary to go through either the notice and comment and notice rulemaking or congressional review. We don't know what Congress did when it received – we don't know exactly what Congress looked at or how they viewed the commentary at the time that they reviewed the guidelines. So I think that the standard is still for reviewing whether deference is due to commentary or the cases in which the Supreme Court has defined and discussed that deference. This commentary, in addition to the points Judge Wilkins made, did go through notice and comment process, published in the Federal Register of Comments Received. It went through the – in fact, virtually all commentary has since 1997, post-Stinson. So how does that affect – I mean, there's a lot in your briefs about sort of a Kaiser analysis, but we are talking now about a notice and comment rule, the equivalent of a notice and comment rule. Well, it's still – we still don't know exactly what Congress was – how Congress viewed the commentary. I'm not aware of – other than they chose not to change them, and yet that does not affect our standard of review. We don't require before applying the Stinson standard of review that there be affirmative evidence that Congress looked at the particular commentary or even guideline. That's just the nature of the legislative process. Well, I would point to the four circuits that have held that Kaiser does apply. How many of them have held that it applies, notwithstanding that the commentary went through notice and comment process? I don't believe that those cases have discussed that. Right. So that's – I don't know whether the particular commentary at issue in those cases went through notice. Of course, there are many circuits who have rejected the Kaiser approach. Anyhow, but here we know that this one went through notice and comment, so it would seem quite unusual then to try to stuff it into the Kaiser bag. Well, even if it went through the notice and comment process, there's still a question of whether or not the commentary is reasonable. And I think that the same issues that Kaiser raises in discussing ambiguity, in a sense, are relevant here as well. Can I ask a question about what the ambiguity is here, sort of separate and apart from any difference questions? I'm curious what your answer is in particular to the statutory index reference for 113A2. Well, 113 has a number of different provisions. Right. And one is very specifically assault with intent to commit another felony. Then the statutory index, which is part of the guise commentary, refers to the aggravated assault, not the simple assault guideline. There are some kind of incongruities between 113 and 111. 113 imposes a higher maximum penalty for the assault with intent to commit a felony than 111 does. It's 10 years as opposed to eight. 113 imposes a lower maximum penalty for assault by striking or beating or wounding than 111 imposes for assault with physical contact. It's one year as opposed to eight. All I knew about this case was that 113A2 is assault with intent to commit another felony and that the index deems that aggravated assault. Isn't that very powerful evidence for the government's position? It may be some evidence, but given the distinctions between 111 and 113, and 111 is a statute we're dealing with, I don't think that the fact that for 113 the sentencing commission imposed the aggravated assault guideline would be controlling. Yeah. And then I just had one question about 111, because I understand your argument to be 111 groups together assault with physical contact and intent to commit another felony. But if we actually looked to 282.4 for assault with intent to commit another felony, it would actually be treated the same as simple assault, right? No, simple assault is 282.3. Assault 282.4 has a higher base level because you are talking about an official and it has enhancements for physical contact and dangerous weapon and bodily injury. 282.3 is assault. I apologize. The point I think is that under 282.4, there's no increase, right? For if the assault is with intent to commit another felony. That's built into the base offense. But you say it's built into the base offense, but if the assault with the intent to commit another felony involves striking as in here, then it's the exact same as if, well, I guess your point is that it's a base offense level 10 instead of in 2.3, it's 7. Or 4. Or 4. But I guess what I'm trying to understand is, too, without looking to the commentary, when the guidelines were first promulgated in 1987, there was no 282.4. The statutory index for 18 USC section 111 listed 282.2 and 282.3. The aggravated assault in what was then called the minor assault guide. Now it's 282.3 is called assault. And so within a year, the commission drafted 282.4 and then changed the statutory index to delete the reference to minor assault and substitute the new 282.4 guideline. So in that sense, looking at the history, which we're supposed to look at under Kaiser or under kind of any type of of interpretive review, we see that 282.4 was really intended from the beginning to be more of kind of like a substitute for the minor assault or the regular assault guideline. I'm not sure if it's a substitute for regular assault because you still have 282.3, which deals with the regular. Well, with respect to section 111 in the cross reference, it is kind of doing the work that the new guideline 282.4 is doing the work that that the simple assault guideline or the regular assault minor assault guideline did before you would agree with that proposition. Except it has 282.4 has an increased base offense level and additional enhancements. So I think that the sentencing commission created a separate category for these assaults against law enforcement officers. And. I see that we lose if we apply Stinson. Can you win under Stinson? I think we can still win under reasonableness. That. Tell me. That that's not the Stinson test, but go ahead. Well, it's inconsistent with the. That's a that's a much different test than a reasonable. So it's inconsistent with the guideline. Well, that the commentary is inconsistent with the general. Common understanding of what aggravated assault is looking at the dictionaries, model, penal code, the treatises, state statutes. They all look at aggravated assault as involving significant violence or serious bodily injury. And to the extent that the commentary is accurate. I think there are dictionaries like Black's Law Dictionary has a has a definition that defines aggravated assault as assault with intent to commit another felony. And there are states there are plenty of them define aggravated assault with as including the intent to commit another felony. Some of them enumerate the felonies. Some don't, but it's not. It's just not uniform. No, but Black's also after that, after their definition says see model, penal code to 11.1.2, which does not include. The model does not pretend to be. It is actually giving guidance on where it thinks the law should go. This provision does. It doesn't pretend to be codifying the existing state of the law. No, but it was. Model penal code isn't like a restating. No, but it is a if you the model recommendation, it's not from 1962. And if you going states that have a, an offense captioned aggravated assault, there are only three of them that include intent to commit another felony in that category. You can have many different assault with intent to do something else that are an aggravated form of assault. But those are specific offenses, not as such as murder, robbery, rape, what instance and says the question couldn't go with those three states and Black's law dictionary. There's nothing directly instance. But the question is what under the standard of review that we apply to the commentary. That's what we're bound by. What, how would, how would we say that that fits that since it was very, very narrow standard of review? Well, I do think that it's inconsistent with the common understanding of aggravated assault for disregarding commentary that it had to be inconsistent with the guys that are plainly erroneous or inconsistent with may not be plainly erroneous, but I think it's consistent. Well, I believe, I think it is inconsistent with the guideline because the guideline doesn't define that the offense, the aggravated assault definition guideline itself, then you could have inconsistency, but how can you be inconsistent with silence? Because if you are, if in the absence of a definition, you look to the common understanding of what the term means, that we do that, the commission must apply the common or most popular understanding. The Supreme court has said that when you're interpreting a term, you look to what the common understanding, generally, generally under like Borden, that when you're looking at a term, I'm just asking because that's what binds us. Corey. Well, I think that Kaiser does affect whether or not Kaiser did not directly overrule Stinson. I think it modifies. I think it, I think it modifies. No sentence anywhere in there. All there is is it's included in a citation to a long string side of citations. And then the court goes on to say, we're not, we're not overruling it. At least from our perspective as a lower federal court of appeals, there's no language that we could point to that would say Stinson has been overruled. No, but there's a difference between overruling and modifying. And I don't think so. I mean, if you're saying it no longer, the standard is no longer the Stinson standard and it's now the Kaiser standard that would be overruling Stinson standard. I'm just trying to understand how we could do that without getting in trouble. Well, so under Stinson, if you look at, after you look at the, at the text, if you look at the, the text can include assault with intent to commit felonies, such as smuggling illegal re-entry of aliens, contraband tobacco. Those are not the kind of offenses that, that the courts have held to be aggravated felonies. There's no serious, there's no aggravated, there's no, if you look at the state statutes that define aggravated felony, the felon and include specific felonies in that group. Well that's because they don't get to regulate immigration. But I think the point is, the committing a felony, sorry, assault with intent to commit another felony is going at is that it is assaults bad, but if you do assault as part of, or on route to or intending to as a way of getting to another felony, it's a tool for committing another felony. That's worse than assault by itself. And I don't know that really turns on what the other felony. It's worse. But if you look at one 11, then you have intent to commit another felony jumps you up to an eight year maximum. But the enhanced penalty where you have dangerous weapons is bodily injury is a 20 year felony. So I think there is a distinction in the, in the, in one 11 between the intent to commit another felony and the enhanced penalty, which I would argue is the equivalent of an aggravated felony. Thank you. I will give you a couple of minutes on rebuts. Good morning. And may it please the court, Eric Hansford for the United States. Well, there is no single consensus definition of what an aggravated assault means when traditional definition is the one that's used by the commentary and that captures assault with the intent to commit another felony. That definition that's used by the commentary reflects federal laws, treatment of the seriousness of that crime in places like section one 13. And I think as judge Garcia's questions earlier, we're going to the clearest proof that, that that definition is proper. Is that cross reference that's found in appendix a or a one 13, a two conviction there's, there's kind of no way to get past that and to rule nonetheless that this, this definition would be impermissible. But when the guidelines were first written in 1987, there are three assault guidelines, assault with intent to commit murder, aggravated assault, and what they called minor assault. Within a year, they added a fourth assault guideline that is specifically called impeding or obstructing or impeding officers. So that is an assault guideline. It's within the group of guidelines for assault. It's now the fourth one. So if you just look at the text of the guidelines and yes, there's a cross reference to both the two a 2.4 and two a 2.2. But if you look at the text of the guidelines, isn't the obstructing or impeding officers guideline more apt or the mine run of one 11 convictions? So I think no, because you are not asking how in the abstract looking only at one 11, how are we going to treat this? You also have to look at all the other places that us code captures assault with the intent to commit another felony. And that includes one 13 one 15 other places as well. The most common being the one 13 a two conviction, which applies when you're on federal land and maritime jurisdiction on tribal land. That's the most common assault with the intent to commit another felony. And for that one, the only place that the appendix a tells you to look is into two a 2.2 or  And there are certain sexual assault provisions that wouldn't apply here. But if you had an underlying sexual assault, assault with the intent to commit that but, but there is no cross reference to two a 2.3 or two a 2.4 for a one 13, a two conviction. And so I think that's, that's kind of the clearest proof that this is where you're supposed to be looking for assault with the intent to commit another felony. But what does one 13, a two have anything to do with this? Where the vast majority of those offenses aren't going to have anything to do with obstructing or impeding federal officers. Because your question for interpreting the guidelines here is not, what do we do with a one 11 conviction? Your question is when you are looking at two a 2.2 and it says aggravated assault, what does that mean? No, the issue is whether as between these two guidelines and this particular issue, this particular set of facts which of these two, to the extent we can discern unambiguously applies to this set of facts. I mean, we don't do, we don't do ambiguity by just saying is aggravated assault ambiguous or not in the abstract. What we do under Chevron or Robinson V Shell Oil is, is we look at ambiguity in the context of the question we have to answer. And the question we have to answer is between these two guidelines, guideline one and two, which one is it? Isn't that the question? I mean, I would say you look at, I agree you look at context, but I think the context you are looking at is the entire guideline book. You are not trying to, the ambiguity that we are trying to resolve is the ambiguity with respect to this offense with these characteristics, right? I mean, we have said that a statute can be ambiguous for other applications, but it's unambiguous with respect to the facts that we have. I'm not sure that your approach would lead to a different answer, but how I would think of it is you are looking at the got the text of the guideline and the text of the guideline says aggravated assault. And then you're trying to figure out is the term aggravated assault ambiguous or in particular, is the commentary definition that is provided a permissible definition, genuine ambiguity, a reasonable resolution. I don't think, I don't think these are saying that we, we just determine in general whether aggravated assault is ambiguous or we determine whether it's ambiguous. When you look at these facts, it's whether it's ambiguous as to assault with the intent to commit a felony, which is the, which is the specific definition while assaulting an officer. But, but that doesn't, I mean, the fact that you are assaulting an officer doesn't make any difference to your guidelines application. It makes a difference to whether you're convicted of one 11 or not. It does, but it does not. The guidelines commentary is not turning on whether it's a one 11. We're supposed to look at the guideline itself first before we look at any commentary to determine whether there's ambiguity. That's my point. You are supposed to. Yes, I certainly agree to that. And you look at the full guideline. And so you are trying to figure out what, what does the term aggravated assault mean? And in particular, does it capture assault with the intent to commit another felony? And it's, that is a traditional definition of what aggravated assault is. And it is clearly provided by the cross reference. I did want to touch on the model penal code quickly because that was, I think I'm trying to, I thought that the way that this exercise went is we have a certain set of, we have an offensive conviction, which is 18 USC one 11. And we have the basic facts of that conviction are that a law enforcement officer was struck and with the intent to commit another felony. And so the question is with those facts, that being the issue, do we pick two a 2.2 or two a 2.4 and just looking at the text of the those guidelines, not the, not the commentary of either, just the text of those, does either one of those unambiguously seem to be the right guideline? Is that, is that the exercise we're doing at least at the first step? I don't think so. I think the X, I mean, I think most of the, most of the steps you laid out are how I would approach it. But then the question is what does aggravated assault mean in two a 2.2 and in trying to figure out what aggravated assault, why do we go straight to that where the sentencing index says you look at, it could be one or the other. Well, because you have to look at the guideline itself to figure out which of those two is a two a 2.2 or two a 2.4. I don't understand how you would resolve that question without figuring out what assault aggravating assault means. If it points you to two a 2.2 and two a 2.4 and two a 2.4 specifically says if this is an aggravated assault, use two a 2.2. So you're referring to two a 2.4 C one, right? The conduct constituted aggravated assault. Yes. Refer to two a 2.2. Yes. Okay. So we, you're saying we can't apply 2.4 without deciding what aggravated assault me. That's correct. Yes, you're. Yep. But, but, and so I think ultimately the challenge here is whether or not you're applying what, what does aggravated assault mean? And the, the definition that's being used here by the commentary consistent with treatises, consistent with blacks, consistent with how federal law views the seriousness of this crime. And so we do think that it was appropriate here with the, the district court correctly applied the guidelines in this case. How does it cut that? Congress kind of had three grid. I'm sorry. The commission had three gradations of assault initially, minor assault, aggravated assault and assault with intent to commit murder. And then they add a fourth, this, this obstructing or impeding officers as, as a gradation of assault. And, you know, I guess the argument could be, well, before, you know, aggravated assault just kind of would seem to be anything kind of in between minor assault and assault to commit murder. But now they have kind of a second category of assault. It's like in between those two extremes. I think it's not correct to see it as an in-between category of assault. Instead, it's a category of assault for a particular set of circumstances, which is when the victim is a federal officer, but it does not. It's not like there's, you know, when you threaten a dangerous weapon, but don't use it, or there's a less serious injury. It's not that category of crime. It's instead just for the specific circumstance. And so I don't think that the, the decision to add this extra category to deal with times when you are assaulting a federal officer tells you much about the meaning of aggravated assault. And again, you've got to figure this out, not just for a one 11 conviction, but for a one 13 conviction, a one 15 conviction and, and under those provisions, assault with the intent to commit another felony. If you look at one 13 assault, Maybe the way it's working, it's a simple assault, but if you do a simple assault against officers or otherwise use assault to obstruct them in their duties, they wanted that to be treated differently than simple assault on everybody else. But at the same time, if you assaulted an officer with the intent to commit murder, no one would think that you have to do the QA 2.4 instead of a murder one. That's right. When you've got, it's one thing if you assault the officer because you just don't like the officer, but if you assault the officer because he or she's in your way, as you're trying to commit another felony, then that would at least with some, I guess, judgment by the district court easily fit into the aggravated felony context. So at some point it's this, this one is the, the officer one is meant to recognize that assaults can be worse because they're against an officer, but they don't become less serious because they're against an officer. That's right. And that's reinforced by that cross-reference and to a 2.4 C one that says if this is an aggravated assault used to a 2.2, yes, we certainly agree. Can I, no, go ahead. Just wanted to ask a question about, we had some questions about this debate between Stinson and Kaiser, and I'm just curious what, and the government's view is practically at stake in that debate. You know, the fifth circuit had a long and interesting opinion about this. And then it concludes by saying, we actually don't think the level of deference makes any difference. Majority in the dissent both say that, and several other cases say that. Is there some category of case that you think the government thinks come out differently under Stinson and Kaiser? So I think, so just preliminarily, I think this is not the case that where the level of deference would make a difference. I think it goes as different because I think taking a step back, when you are looking at Stinson, what Stinson is saying is we are going to apply our slash seminal rock deference and to the guidelines commentary. And then Kaiser goes up and says, we are going to keep our slash seminal rock deference. We are going to maintain that under starry decisive principles. And we are going to reiterate reemphasize restate. That's the vocabulary that the Supreme court is using. We are going to reiterate the already existing limitations of that deference. So in other words, the Supreme court is saying on its face, this is not a change in terms of the level of deference that's being afforded. This is just the application of our slash seminal rock deference, but some of the language, if you take it in isolation can look very loose. And so we want to reiterate the already existing limits that are within that deference. So in other words, the Supreme court on its face is saying, this is not a change in the law. This is not a change in the level of deference. And indeed the main point of the opinion is under starry decisive principles. We are going to keep that old our seminal rock deference. And I think that's made especially clear by the fact that Kaiser does cite Stinson among the many cases that is applying this our seminal rock deference in the plurality. There would be a huge difference because Stinson wasn't an ordinary our situation because it was dealing with the sentencing commission and they were clear on Stinson that you don't even need ambiguity to be bound by the commentary, but of course you do need ambiguity under ordinary hour and under Kaiser. And so there is difference between Stinson and all of the other ordinary executive agency applications of our slash Kaiser review. And so it seems to me there is a material difference, maybe not in this case, but there's real difference between Stinson and Kaiser, at least as to whether ambiguity let alone genuine ambiguity is required. And so I'm curious why the government has taken the position that Stinson is now overtaken by Kaiser when they're different in that regard. And Supreme court has not overruled Stinson and the Supreme court has said courts of appeals shouldn't be getting ahead out of our skis when the Supreme court hasn't yet overruled something. So I don't understand why on earth the government is arguing for a Kaiser view in the sentencing guidelines context. So I similarly don't want to get out over my skis because this position is not articulated by our office. It's coming from the department and the solicitor general's office. But from my understanding, it is what I said earlier to judge Garcia, which is that Stinson requires no ambiguity and everything that you said about our Kaiser requires at a minimum ambiguity. So I think there are two things to say to that. One is that the commentary can do various things. The commentary is not just clarifying when the guidelines apply. The commentary can also give background information. The commentary can generally describe things. Stinson goes through this. So in other words, the commentary is not limited to the situation of clarifying what the guidelines mean. But then I think the other point is the only question when someone's applying the commentary to understand the meaning of the guideline itself, if it's just a bunch of history, that's not going to, unless it's used as interpretive history, it's not going to be raised in this context. So maybe, maybe the other point goes to it, which is that Stinson, what, what Kaiser says is we are continuing this level of deference, this our Seminole rock deference that Stinson says it's applying. So the only way you get to these concerns about. No, Stinson said kind of like, well, recognize it was different. No, I think Stinson says the situation is kind of like the situation with the guidelines and the commentary is kind of like regulations or. Kind of like, no, no, it doesn't say kind of like, but I, I forget the exact phrase. Right. Right. But, but, but then what Stinson says is that it is going to adopt that level of deference when applying the commentary. So in other words, it's saying it's not a perfect. Stinson also says you don't have to, you always had to have ambiguity for our dealing with executive branch agencies, which under Stinson, you never had to have ambiguity. That's my only, I only point is that it really seems like you're a little bit mixing apples and oranges. Isn't the answer to judge Millett's question that the Supreme court basically. I think it's interesting that we kind of exercise what we might want to call a little bit of kind of revisionist history. In the sense that. It says in its footnote. That the pre hour. Decisions applying Seminole rock. Our legion and at least Stinson is one of them. In it previously described Seminole rock. As deferring only when there's ambiguity in the regulation. So the Supreme court seems to be kind of. Pretending that Stinson was a faithful application of Seminole rock. When was it to try to harmonize it with what it was saying in Kaiser? I mean, I, I don't think. I want to say that the Supreme court was misleading in terms of how, how it was deciding the case. I think instead it's that the Supreme court was recognizing in Kaiser that certain. Statements out of context might be misleading. In terms of how our or Seminole rock deference is supposed to apply. You don't have to say it the way I said it. I probably shouldn't have said it the way that I, that I said it. But I don't care. You should care. You can say it was a refinement. Well, I think it's, I mean, I think the language that they're using is it's a restatement. It's reemphasizing these already existing principles. And if you take seriously, what the Supreme court is saying. With the decision is saying on its face. I think it does follow that that restatement is going to apply wherever. Our Seminole rock deference is applied, which does include. I take them very seriously, but I also take seriously when they say, don't, don't read us as overruling precedent until we've said we're doing it. And I also take quite seriously that the Stinson they cited dealt with a guide commentary that had gone through notice and comment. And now virtually all notes since 97, almost all noticing. Commentary goes through notice and comment, which completely changes the game. And you're not even an hour land to begin with, which is why the whole, the government's position is very confusing to me. But you again, it is, it is the department's position on that. Yes. No further questions. Let me, let me just ask you this. When. When. The guideline is. To a 2.4. And it includes a cross-reference in the guideline itself, not in the commentary. To, you know, The aggravated assault guide. And the aggravated assault guideline is preexisting. It's not. So in, in 88, when to a 2.4 was first written, we already had. The aggravated assault guide. And it already had a commentary. That defined what aggravated assault is. I mean, shouldn't that count for something. That the commission in drafting the guideline. Referred to a previously kind of like approved commentary. In a commentary that had in essence, kind of been reviewed by Congress. Part of approving that prior. Aggravated assault guideline. Shouldn't that. Shouldn't that be a thumb on the scale somewhere? It does seem like it should be. And it seems in some ways analogous to a situation where you have. You know, a amendment to a statute where you already have kind of a consensus on what the. The prior case law means it seems analogous to a situation. Where you are looking to what the already accepted meaning is, and you are kind of potentially incorporating that. So, yes, I do think that would. Meaningfully push towards applying that commentary definition as well. There are no further questions. You'd ask this car to affirm. We'll give you a few minutes. Thank you. The purpose of the guideline provisions to a 2.2 and to a 2.4. Or to provide guidelines for the appropriate punishment for violations of section 111. And so for that, I think you have to look at the structure of section 111. You've got the 111 a, which is a misdemeanor and simple assault. Then you have the felony provision in one a, which is physical contact or intent to commit another felony. And then 111 B, while it's not titled, aggravated assault is an aggravated version of felony assault, serious bodily injury, dangerous weapon. Assault and attempt to commit felony. Is subject to eight times the punishment of simple assault. So, Congress definitely wanted some differentiation between intent. Assault with the intent to commit another felony and simple assault. Correct. Correct. And they added that provision to 111 after the commentary had been written and was in place. But then you have 111 B, which has an aggravate, which provides for not more than 20 years where you have serious bodily injury or dangerous weapon, which are two of the criteria in to a 2.2 commentary definition. And the guidelines created different structures than the statute. And I think you have to take into account that there's a lot. This is a statute or increase in levels, I should say, or the types of things that are in B and. 2.2, right? Yes. And you also have the you have enhancements in to a 2.4 for bodily injury and dangerous weapon. More substantial and on your view, simple assault officer is treated exactly the same under to a 2.4 as assault with intent to commit a felony on a on an officer. Right? No, it would be assault with physical contact. Right. It's different from no physical contact, but with intent to commit another felony, right? That will receive no increase on 2.4. Right. It would increase the it increases the base offense level to a 2.4 increases the base offense level over simple assault. Simple assault on an officer. It would they would both receive a 10. Right? Yes. So, I'm getting at the incongruity with between your view and how 111 works. 111, as judgment pointed out, says it's eight times worse to have an assault with an intent to commit another felony. And on your view, the guideline treats it exactly the same as if there's no such intent. Maybe that's a little circuitous, but well, I mean, I think that the guideline takes that into account by having the base level. It's the same whether there's any no, but from differentiating from the simple assault. You mean the 2.3 guideline for assault minor assault or regular assault and 2.4 says pushing an officer. Just for the sake of pushing an officer will be treated the same as pushing an officer out of the way so you can shoot somebody else. Yes, but I think and just looking at at 113, I'm not I think that it is. There's so many differences between 111 and 113 that you can't automatically say, because 113 has intent to commit a felony. As in one category that that carries over to 111, 111 puts contact and any other felony in the same category. 113 puts contact and any other felony in different categories. Okay, I think there's more questions. I think we change your argument. Thank you very much. Okay, submitted.
judges: Millett, Wilkins, Garcia